## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

Christopher Cremeans

      v.                                  Case No. 17-cv-572-SM
                                           Opinion No. 2019 DNH 060
William Wrenn, Christopher
Kench, Michael Zenk, Jon
Fouts, and Nichole Kipphut

## O R D E R

Plaintiff, Christopher Cremeans, an inmate at the New Hampshire State Prison ("NHSP"), has brought this action under 42 U.S.C. § 1983, asserting that five prison officials, acting in both their individual and official capacities, have violated his rights under the First and Fourteenth Amendments. Before the court are: (1) plaintiff's "Motion to Bar and Preclude Defendant's Motion to Dismiss" (Doc. No. 18); (2) defendants' motion to dismiss (Doc. No. 12); and (3) plaintiff's request for injunctive relief contained in the complaint (Doc. No. 1).

## Motion to Bar and Preclude (Doc. No. 18)

Liberally construed, the motion to bar and preclude asserts supplemental objections to defendants' motion to dismiss along with a request that the court sanction defendants by denying their motion to dismiss, for what plaintiff argues are insufficiently supported defenses and gross mischaracterizations

of plaintiff's claims.  Taking plaintiff's pro se status into account, the court concludes that the motion to bar and preclude is a permissible supplement to Cremeans' objection to the defendants' motion to dismiss, and to that extent, the court has duly considered the arguments therein in ruling on the motion to dismiss.  Finding, however, that defendants have neither misrepresented Cremeans's claims in a misleading manner, nor engaged in any other sanctionable misconduct, the court declines the request to bar or preclude the motion to dismiss and thus denies plaintiff's motion (Doc. No. 18).

## **Motion to Dismiss (Doc. No. 12)**

The defendants move to dismiss the complaint, based on sovereign immunity and qualified immunity, and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## I.  Standard

When ruling on a Rule 12(b)(6) motion based on the failure to state a claim or the defense of qualified immunity, the court must "'accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the [plaintiff's] favor.'" Lemelson v. Bloomberg L.P., 903 F.3d 19, 23 (1st Cir. 2018) (citation omitted).  Courts may augment those

pleaded facts and inferences with information from "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). Focusing on the non-speculative, non-conclusory facts and reasonable inferences, the court must ask "whether it is plausible, as opposed to merely possible, that plaintiff's complaint narrates a claim for relief." Lemelson, 903 F.3d at 23 (citation omitted).

II. Background[1]

In 2005, Cremeans was convicted of two counts of aggravated felonious sexual assault and two counts of endangering the welfare of a child. The charges against Cremeans "stemmed from sexual assaults [he] perpetrated against his stepchildren . . . who were as young as four and five years old . . . when the assaults first began." State v. Cremeans, Nos. 216-2004-CR-01243 et al. (N.H. Super Ct., Hillsborough Cty. June 6, 2017) (Doc. No. 1, at 41). Cremeans was sentenced to a term of incarceration, and his sentencing order provided that he was to

---

[1]The facts recited in this section come from plaintiff's complaint, the documents he attached to it, see Fed. R. Civ. P. 10(c) ("written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"), and matters susceptible to judicial notice.

have no unsupervised contact with minors under the age of seventeen.  See id.

When Cremeans first arrived at the NHSP, prison officials approved a visitor list for Cremeans that included his two minor daughters.  In 2008, his two-year-old grandson, born after Cremeans was incarcerated, was added to his visitor list.  Cremeans received visits from his grandson accompanied by the boy's mother several times before February 2017, when Cremeans was informed that NHSP Warden Michael Zenk had removed the grandson from his visitor list.  An NHSP Unit Manager advised Cremeans that his grandson had been removed to enforce the provision in his sentencing order that he have no unsupervised contact with minors.

Cremeans moved in the sentencing court to vacate the no-contact provision in his sentence.  While the Superior Court granted that motion and struck the provision in June 2017, that court also expressly noted that it did not "make any finding with respect to the New Hampshire Department of Corrections' authority to place limitations on [Cremeans's] contact with third persons, including those covered by the no-contact provisions at issue, while he serves his sentence." Cremeans, slip op. at 3 (Doc. No. 1, at 43).

Following the issuance of that Superior Court order, Cremeans renewed his efforts to have his grandson restored to

his visitor list.  On July 28, 2017, New Hampshire Department of Corrections ("DOC") Victim Services Coordinator Nichole Kipphut responded to two Inmate Request Slips ("IRSs") Cremeans had submitted, as follows:

> After review of all information available [and] in light of the visiting room policy [and] the DOC's authority to restrict visitor access to offenders, including minor children, even if the Sentencing Order does not explicitly prohibit contact, it has been decided to prohibit your contact [with] minor children until you have made arrangements for a trained chaperone to be present during visits [with] minors. Please review the "Re-Entry Guide" or talk [with the Intensive Sexual Offender Treatment program] regarding community treatment providers, such as RTT Associates, who offer a chaperone program.

July 28, 2017 IRS Resp. (Doc. No. 1, at 47).

Cremeans filed what he characterized as a first-level grievance with NHSP Major Jon Fouts to complain about Kipphut's response to his IRSs.  In his response, Fouts told Cremeans that he did "not have supervisory control over Ms. Kipphut and [could not] redirect her actions."  Aug. 1, 2017 IRS Resp. (Doc. No. 1, at 48).  Fouts further informed Cremeans that the proper way to appeal Kipphut's decision was to file a grievance with the Warden.  See id.

Cremeans then filed a grievance with Warden Zenk.  The Warden denied that grievance, stating:

> Ms. Kipphut . . . has acted within the scope of her authority in determining that a properly trained chaperone must be present in order for your grandson to visit you at this facility.  Her decision takes

into account that your offense behavior involved the
sexual abuse of minors and the fact that you have not
completed the Sex Offender Treatment Program at this
facility.  Your objection to this increased
restriction is without merit.  While a resident is
incarcerated, the DOC has full control over all
visitors to the prison property.  This control extends
to restricting any visitors that might jeopardize
security or safety. . . . [B]ecause the DOC has the
ability to restrict visitor access, it is within its
authority to prohibit a resident from seeing a minor
if the security or safety of the institution or an
individual would be placed at risk.  As set forth
above, the DOC has the authority to restrict visitor
access to its residents.  That restriction may extend
to any person, including minor children, even if a
resident's mittimus does not explicitly prohibit
contact between the parties.

Aug. 6, 2017 Resp. to Grievance (Doc. No. 1, at 50) (citing N.H.

Rev. Stat. Ann. § 21-H:13, VI; N.H. Code Admin. R. COR

305.02(d); DOC Policy and Procedure Directive ("PPD") 7.09,

III).

Cremeans appealed Warden Zenk's decision to DOC

Commissioner William Wrenn.  Defendant Christopher Kench denied

that appeal on the Commissioner's behalf.

Cremeans has not alleged whether he has taken any steps to

find a trained chaperone to satisfy the prison's condition for

allowing Cremeans to resume contact visits with his grandson,

and Cremeans has not otherwise stated that he is unable to

secure the services of a trained chaperone.  Since March 2018,

DOC rules have provided: "Persons under departmental control who

are incarcerated for crimes committed against children or have a

history of crimes against children, may have visiting privileges with children denied or further restricted."  N.H. Code Admin. R. COR 305.02(m) (eff. Mar. 23, 2018).

III. <u>Discussion</u>

Cremeans asserts that defendants violated: (1) his First Amendment right to familial association (Count I); (2) his Fourteenth Amendment right to procedural due process (Count II); and (3) his Fourteenth Amendment right to equal protection (Count III).  Defendants move to dismiss on multiple grounds, each of which is discussed below.

A.    <u>Eleventh Amendment (Official Capacity Damages Claims)</u>

Defendants argue that the claims for damages that Cremeans asserts against them in their official capacities should be dismissed on grounds of sovereign immunity.  The Eleventh Amendment bars claims for damages asserted against state officials sued in their official capacities unless the state has waived its sovereign immunity.  <u>See</u> <u>Town of Barnstable v. O'Connor</u>, 786 F.3d 130, 138 (1st Cir. 2015); <u>Barrett v. Coplan, 292 F. Supp. 2d 281, 287 (D.N.H. 2003)</u> (Section 1983 does not abrogate sovereign immunity, and state has not waived it).  All of Cremeans's damages claims asserted against the defendants in their official capacities are dismissed.

B.  Individual Capacity Claims

    1.  Familial Association Claim (Count I)

In Count I, Cremeans claims that the defendants violated his federal constitutional right to familial association "by interfering with [his] visits with his grandson by removing [his] grandson from [his] visiting list without cause, and for failing to re-instate [his] grandson to [his] visiting list." Compl. ¶ 39 (Doc. No. 1).[2]  Given that Cremeans received notice that, beginning on July 28, 2017, he could have visits from his grandson so long as he arranged for the attendance of a trained chaperone, Count I is best understood as a claim that defendants violated Cremeans's right to association by: (1) taking his grandson off the visitor list for six months (from February 2017 through July 2017); then, (2) beginning on July 28, 2017, restoring Cremeans's ability to be visited by his grandson, but only in the presence of a trained chaperone.

_____

[2]Cremeans frames Count I as a First Amendment claim, while defendants argue that a right to familial association arises under the substantive due process component of the Fourteenth Amendment.  There is no need for this court to resolve that issue in this Order.  Cf. Schwarz v. Lassen Cnty. ex rel. Lassen Cty. Jail, No. 2:10-CV-03048-MCE-CMK, 2013 U.S. Dist. LEXIS 136933, at *31, 2013 WL 5375588, at *11 (E.D. Cal. Sept. 24, 2013) ("Given that there are no clear standards that apply to a claim for interference with the right to familial association in violation of the First Amendment, the Court finds it appropriate to import the standards that apply to other associational freedoms claims" arising under the Fourteenth Amendment.).

a.    <u>Qualified Immunity</u>

Defendants argue that if Cremeans has a right to
unchaperoned visits with his grandson (a point they do not
concede), Cremeans's claims for damages against all of the
defendants in their individual capacities are barred by the
doctrine of qualified immunity because such a right was not
clearly established in 2017.  Qualified immunity shields
individual officers from claims for damages "'unless (1) they
violated a federal statutory or constitutional right, and (2)
the unlawfulness of their conduct was clearly established at the
time.'"  Hill v. Walsh, 884 F.3d 16, 21 (1st Cir. 2018) (quoting
Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (internal
quotation marks omitted)).

> [W]hether the law was clearly established at the time
> of the incident[] is itself divisible into two
> inquiries.  First, the plaintiff must identify either
> controlling authority or a consensus of persuasive
> authority sufficient to put an officer on notice that
> his conduct fell short of the constitutional norm.
> Second, the plaintiff must show that an objectively
> reasonable officer would have known that his [or her]
> conduct violated the law.

Conlogue v. Hamilton, 906 F.3d 150, 155 (1st Cir. 2018)

(citations omitted).

> Because qualified immunity is intended to protect all
> but the plainly incompetent or those who knowingly
> violate the law, the existing precedent at the time of
> the officers' conduct must be clear enough that <u>every</u>
> <u>reasonable official</u> would interpret it to bar the

> conduct at issue.  Although plaintiffs are not
> required to identify controlling precedent with
> identical[] facts, . . . clearly established law must
> be sufficiently particularized to serve as a fair and
> clear warning that the officers' conduct is
> unconstitutional.

Hill, 884 F.3d at 21-22 (internal quotation marks and citations omitted) (emphasis in original); see also White v. Pauly, 137 S. Ct. 548, 552 (2017).  "When a defendant invokes qualified immunity, the burden is on the plaintiff to show that the defense is inapplicable."  Escalera-Salgado v. United States, 911 F.3d 38, 41 (1st Cir. 2018).


> b.  Six-Month Ban on Visits

Plaintiff has identified neither controlling authority, nor a consensus of persuasive authority from other jurisdictions that would put New Hampshire prison officials on notice in 2017 that taking a minor grandchild's name off a convicted sex offender's visitor list for a period of months would violate that inmate's federal rights.  In Overton v. Bazzetta, the leading Supreme Court case concerning restrictions on prisoners' visits with children, the Court considered whether inmates' associational rights were violated by a prison policy that permanently banned all visits from prisoners' young nieces and nephews (for no proffered reason other than to reduce the number of and potential for disruption caused by children visiting the

prison), while allowing visits from the inmates' minor siblings, children, and grandchildren, if those minors were accompanied by a parent or legal guardian. 539 U.S. 126, 133, 136 (2003). The Court in Overton found that the restrictions on visits with children were reasonably related to legitimate safety and security interests. Id. at 136.

While the restrictions here are not identical to those in Overton, that fact is not determinative of whether the law in 2017 was clearly established, with respect to the validity of a six-month ban on contact visits with a grandchild. There is no First Circuit case on the issue. The courts that have addressed similar restrictions in other jurisdictions, following Overton, have generally concluded that the pertinent law is not clearly established. See, e.g., Cleveland v. Martin, 590 F. App'x 726, 731 (10th Cir. 2014) (defendants were entitled to qualified immunity as to claim that they violated inmate's right of association with his minor children when they were removed from his visitor list); Dunn v. Castro, 621 F.3d 1196, 1205 (9th Cir. 2010) (reasonable officer could have concluded that prisoner who was believed to have engaged in improper sexual conduct with a minor while incarcerated could be temporarily deprived of his visitation privileges with his own children); Flynn v. Burns, 289 F. Supp. 3d 948, 967 (E.D. Wis. 2018) (prison official "had no definitive rule in 2016 prohibiting him from issuing a no-

contact order that banned all contact between [the inmate] and his daughter for a one-year period" based solely on the mother's request); see also Wirsching v. Colorado, 360 F.3d 1191, 1201 (10th Cir. 2004) (prison officials did not violate inmate's First and Fourteenth Amendment rights "in refusing to allow visits between a convicted sex offender who refused to comply with the requirements of the treatment program and his child,"); cf. Williams v. Ozmint, 716 F.3d 801, 807–08 (4th Cir. 2013) (complete suspension of inmate's visitation privileges for two years did not violate any clearly established constitutional right); Malavé v. Weir, No. 3:16-cv-00009 (JAM), 2018 U.S. Dist. LEXIS 9300, at *21, 2018 WL 500644, at *7 (D. Conn. Jan. 22, 2018) ("there is no clearly established constitutional right of a prisoner . . . against the suspension by prison officials of in-person visitation or telephone communications [with inmate's spouse] for a period of as long as eight months"), aff'd, 750 F. App'x 65 (2d Cir. 2019).

Given the holdings in cases such as Wirsching and Dunn, and noting that among district court cases, courts have generally concluded that the law was unclear, this court concludes that there is no controlling law and no consensus of persuasive authority indicating that a temporary ban on visits between a convicted sex offender and a minor child would violate that inmate's rights, particularly where the inmate's sentencing

order for most of that time period included a no-contact provision. Due to that lack of clarity in the law, reasonable prison officials in New Hampshire in 2017 would not be alerted that it would be unlawful to take away Cremeans's ability to have contact visits with his grandson for a period of approximately six months. Accordingly, as to the removal of the grandchild from Cremeans's visitor list that lasted from February 2017 until the trained chaperone restriction was imposed in July 2017, defendants are shielded from liability under Count I by the doctrine of qualified immunity.

c.    Trained Chaperone Requirement

The Overton decision provides a set of factors that courts consider in assessing whether a restriction like the trained chaperone requirement is consistent with an inmate's right of association. As the Court noted in Overton, there can be no question that "[p]rotecting children from harm is . . . a legitimate goal" of prison administrators, and that prisons have "valid interests in . . . protecting child visitors from exposure to sexual or other misconduct." Id. at 133. The requirement that a trained chaperone be present when a child visits with a convicted sex offender is rationally related to that legitimate interest, as it places a specially trained observer near the visit to watch for issues that might arise.

Furthermore, the trained chaperone requirement does not bar Cremeans from seeing his grandson; it only bars him from contact visits with his grandson outside of the presence of a chaperone. Cremeans's pleadings indicate that his grandson is approaching his teenage years, and nothing in the record indicates that Cremeans has been barred from engaging with his grandson using other effective means of communicating with a child of that age, such as letters and phone calls.

As to "the impact that accommodation of the asserted associational right would have on guards, other inmates, the allocation of prison resources, and the safety of visitors," id. at 135, the documents filed as attachments to the complaint suggest that defendants, at the time they made the decisions challenged here, believed they could not adequately supervise such visits, while maintaining safety and security at the staffing levels at that time. Accommodating Cremeans's desire for visits without a trained chaperone, therefore, could have a negative impact on NHSP safety and security resources.

Finally, Cremeans has not pleaded facts that show, and the court cannot identify, any "obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." Id. at 136 (citation omitted). Cremeans has suggested that the current staffing levels in the visiting room and supervision by his

grandson's mother is sufficient to accommodate the prison's interests.  However, prison officials have determined otherwise, and decisions regarding staffing and the supervisory requirements of a prison's contact-visit room are matters generally entrusted to prison officials' expertise.  Courts must accord "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  Id. at 132.

Therefore, the relevant factors assessed at this stage of the case, on balance, weigh in favor of finding the trained chaperone requirement to be reasonably related to a legitimate penological interest in safety and security.  The Rule 12(b)(6) motion is properly granted as to Count I on that ground.  And even if the court were to conclude that Overton's balance of relevant factors is best calibrated after discovery, dismissal would still be warranted now.  Due to the absence of controlling law and the lack of a consensus of appellate court decisions from other jurisdictions finding in favor of any inmate on such issues, a reasonable prison official in 2017 would not be alerted that it would be unlawful to allow visits between a convicted sex offender and his grandchild to occur only in the presence of a trained chaperone.  Accordingly, the court grants

defendants' motion to dismiss Count I as to both the six-month ban on visits and the trained chaperone requirement.

## 2. Due Process Claim (Count II)

Defendants argue that plaintiff's procedural due process claim (Count II) fails to state a claim upon which relief can be granted, and that defendants are shielded by qualified immunity as to that claim.[3]

The procedural protections of the Due Process Clause of the Fourteenth Amendment are triggered if there is a deprivation of a protected interest in life, liberty, or property. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). Protected interests may also arise from state laws and regulations, but the liberty

_____

[3]Cremeans has not pleaded facts stating a substantive due process claim upon which relief can be granted, arising out of the removal of his grandson from his visitor list in February 2017 or the imposition of a trained chaperone requirement beginning in July 2017. Cf. S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 91, 93 (1st Cir. 2014) (to state claim that executive action violates substantive due process, plaintiff must allege facts showing that conduct "objectively 'shocks the conscience'"; even bad faith is not necessarily enough (citation omitted)). The restraints at issue, imposed on an inmate convicted of sex offenses involving minors, do not amount to restrictions that shock the conscience.

interests of prisoners are subject to the limitations set forth in Sandin v. Conner, 515 U.S. 472 (1995). See Wilkinson, 545 U.S. at 221-22.

Under Sandin, the court considers whether the restrictions at issue impose an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Wilkinson, 545 U.S. at 223 (quoting Sandin, 515 U.S. at 484). The Due Process Clause itself does not provide Cremeans with a protected liberty interest that could form the basis of a due process claim, as the restrictions on visits do not exceed the scope of his sentence in "such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." Sandin, 515 U.S. at 484; cf. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." (internal citation and quotation marks omitted)).

Cremeans's attempt to draw a protected liberty interest out of the terms of the terminated consent decree in Laaman v. Helgemoe, Civ. No. 75-cv-258 (D.N.H.), and the PPDs, is similarly unavailing. The terminated consent decree's provisions, having become part of a settlement agreement that may be enforced in the state courts, are not independently

enforceable here.[4]  And to the extent the terminated consent decree or the PPDs are offered here as the source of a protected liberty interest, post-Sandin, neither they nor other sources of state law can generally create protected liberty interests subject to the due process requirements of the Fourteenth Amendment, unless Sandin's "atypical and substantial hardship" standard is met.  See, e.g., Dominique v. Weld, 73 F.3d 1156, 1161 (1st Cir. 1996) (after noting that settlement agreement did not appear to impose relevant duties upon prison officials, court further noted that restrictions at issue, in any event, "did not meet Sandin's threshold test of working a 'significant and atypical hardship in relation to the ordinary incidents of prison life'" (citation omitted)).

There are many cases concerning temporary bans on inmates' contact visits with family members, which underscore that the short-term ban on Cremeans's grandson's visits in 2017 was not an "atypical hardship" of the kind contemplated by Sandin.  See, e.g., Zamora v. Thaler, 407 F. App'x 802, 803 (5th Cir. 2011) ("no constitutional basis for [inmate's] complaint that her mother was removed from the prison visitation list without a

---

[4]The July 6, 2001 Order in Laaman terminated federal court jurisdiction over the consent decree in that case and provided that the consent decree's terms, as modified by the parties' settlement agreement, would be enforceable in the state courts. See Endorsed Order, Laaman, Civ. No. 75-cv-258 (D.N.H. July 6, 2001) (approving stipulation of dismissal, ECF No. 531).

formal hearing"); Ware v. Morrison, 276 F.3d 385, 387-88 (8th Cir. 2002) ("loss of visitation privileges is within the ordinary incidents of confinement and cannot be considered an atypical and significant hardship"); Bostrom v. Rowland, No. 1:15-CV-336, 2015 U.S. Dist. LEXIS 98021, at *18, 2015 WL 4546582, at *8 (W.D. Mich. July 28, 2015) ("Plaintiff has no liberty interest in the visitor restriction that permanently prohibited Plaintiff's mother from visiting."); Harrison v. Pittman, No. 1:09-CV-333, 2009 U.S. Dist. LEXIS 58097, at *16, 2009 WL 2033343, at *5-*6 (W.D. Mich. July 8, 2009) ("temporary deprivation of visitation privileges" for inmate's fiancé was not atypical or significant hardship); cf. also, e.g., Charriez v. Sec'y, Fla. Dep't of Corr., 596 F. App'x 890, 894 (11th Cir. 2015) (one-year disciplinary suspension of visitation privileges was not atypical hardship); Flynn v. Burns, 289 F. Supp. 3d 948, 968 (E.D. Wis. 2018) ("procedural due process probably affords [inmate] no relief" with respect to due process claim challenging one-year ban on contact visits with his daughter, "because of the limitations on the types of interests that are protected") (collecting cases).

Further, adult supervision requirements for minor children's visits with inmates are also not atypical in prison settings. See, e.g., Overton, 539 U.S. at 133 (evaluating validity of requirement that parent or legal guardian accompany

and supervise children visiting inmates).  Cremeans's
allegations regarding a "trained chaperone" requirement, without
more, do not state a claim that the requirement imposed on his
visits with his grandson was an atypical and significant
hardship, relative to the ordinary incidents of prison life.
For those reasons, Count II fails to state a claim upon which
relief can be granted.[5]  Accordingly, the court grants
defendants' motion to dismiss Count II.


      3.   Equal Protection Claims (Count III)

    Liberally construed, in light of clarifications provided in
plaintiff's objection to defendants' motion to dismiss,
Cremeans's claim in Count III asserts that defendants violated
his Fourteenth Amendment right to equal protection:  (1) by
requiring him to have a trained chaperone present to receive
visits from his grandson while not imposing such a requirement
on inmates convicted of murder or other violent crimes; and (2)
by imposing that restriction on Cremeans's visits but not

---

[5]Plaintiff also points to DOC regulations regarding the
notice that must be provided to visitors who are denied access
to visits with a prisoner. Defendants argue that those rules do
not apply as Cremeans's grandson was not denied access because
of the grandson's failure to comply with DOC facility rules.
This court agrees.  But even if the defendants had a duty under
those regulations to provide notice to the grandson, Cremeans,
as a pro se plaintiff, may not assert claims on behalf of anyone
other than himself in this court.  See 28 U.S.C. § 1654; LR
83.2(d).

similarly limiting the ability of other sex offenders to receive visits from children.

### a.   Comparison with Violent Offenders

Cremeans argues that inmates convicted of murder and other violent crimes have less restrictions on their visits with children than Cremeans, a convicted sex offender.  "The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group."  Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-06 (1st Cir. 2015) (citations omitted).

> Generally, for an equal protection claim to survive a
> motion to dismiss, a plaintiff must allege facts
> plausibly demonstrating that compared with others
> similarly situated, [the plaintiff was] selectively
> treated . . . based on impermissible considerations
> such as race, religion, intent to inhibit or punish
> the exercise of constitutional rights, or malicious or
> bad faith intent to injure a person.

Id. at 106 (internal quotation marks and citations omitted; alterations in original).  Where "there is no implication of a fundamental right being affected," and petitioner does not claim membership in a suspect class, the state actor's "decisions require only rational basis review."  Id. (citations omitted).

"Sexual offenders are not a suspect, or quasi-suspect class, so as to entitle a sex offender to heightened scrutiny of

prison officials' allegedly discriminatory acts under the equal protection clause." Sweeney v. N.H. State Prison, No. 12-CV-276-SM, 2013 U.S. Dist. LEXIS 25215, at *5, 2013 WL 867124, at *2 (D.N.H. Jan. 25, 2013) (citation omitted)), R&R approved, 2013 U.S. Dist. LEXIS 26036, at *1, 2013 WL 866777, at *1 (D.N.H. Feb. 21, 2013). Cremeans's "status as a [child] sex offender is undoubtedly a 'relevant aspect' of any difference" in access to visits from minors, "as compared to inmates convicted of other offenses." Id., 2013 U.S. Dist. LEXIS 25215, at *6, 2013 WL 867124, at *2. Therefore, Cremeans's "assertion that non-sex offenders are treated differently than sex offenders . . . does not suffice to allow the court to find that he was treated differently than others similarly situated in all relevant aspects" and "does not otherwise establish an actionable claim of discrimination in violation of his rights under the Fourteenth Amendment." Id., 2013 U.S. Dist. LEXIS 25215, at *6-*7, 2013 WL 867124, at *2. Following Sweeney, this court concludes that Cremeans's allegations regarding the preferential treatment of other inmates with respect to visits does not state a Fourteenth Amendment claim upon which relief can be granted. Accordingly, the court dismisses that aspect of Cremeans's equal protection claim.

b.    Class of One

The remainder of Count III alleges differential treatment among sex offenders, in effect asserting that Cremeans suffers discriminatory treatment as a member of a "class of one."  To establish a class-of-one equal protection violation, the plaintiff must prove that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601 (2008).

Plaintiff, who was convicted of sex offenses involving minors, has filed an affidavit of a fellow inmate, also serving a long sentence following a conviction of sex offenses against a minor, who avers that he has been allowed visits with his niece and nephew without restriction since 2006.  Plaintiff has asserted that those visits have occurred on a monthly basis with only the children's grandparents present, without a trained chaperone.  Cremeans has not alleged, however, that the other inmate is similarly situated with Cremeans in all relevant respects, including, for example, whether there are relevant differences relating to other aspects of the inmates' offense characteristics or disciplinary records that could warrant different treatment of contact visits with young children. Moreover, while Cremeans's objection to the motion to dismiss asserts that the other inmate's visits have occurred on a

monthly basis, Cremeans has not pleaded facts in the complaint indicating that those visits have been allowed to recur without any restrictions since Cremeans's grandson's visits became restricted. To that extent, Cremeans has failed to state a class-of-one equal protection claim upon which relief can be granted.

Nevertheless, this court cannot rule out the possibility that Cremeans could plead facts showing that although he and that particular inmate, or some other as-yet unnamed inmate, are similarly situated in all relevant respects, they have not been treated the same way during the relevant time period, without a rational basis for the differential treatment. For that reason, this court grants Cremeans leave to file an amended complaint to allege additional facts to state a viable class-of-one equal protection claim.

Accordingly, the court grants defendants' motion to dismiss Count III, but declines to direct entry of judgment at this time. Cremeans is granted leave to file an amended complaint, within thirty days of the date of this Order, pleading new facts, if he can, showing that although Cremeans and other sex offenders are similarly-situated in all relevant respects, they have been treated differently in the relevant time period without a rational basis for the difference, with respect to their ability to have unchaperoned contact visits with minors.

## Request for Injunctive Relief

In addition to seeking declaratory relief and damages, plaintiff's complaint also asks the court to:

> Issue an Emergency Injunction requiring Defendants to re-instate Plaintiff's grandson back onto his visiting list; [and]

> Issue a Temporary Restraining Order requiring Defendants not to interfere with visits with Plaintiff and his grandson, nor to move Plaintiff from his current housing unit except for entry into the Sex Offender Treatment Program.

Compl. (Doc. No. 1) at 12.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (internal quotation marks and citation omitted); see also Axia NetMedia Corp. v. Mass. Tech. Park Corp., 889 F.3d 1, 6 (1st Cir. 2018). The burden of proof is on the movant. See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). To demonstrate a likelihood of success on the merits, a plaintiff must show "'more than mere possibility' of success — rather [he] must establish a 'strong likelihood' that [he] will ultimately prevail." Sindicato Puertorriqueño de Trabajadores, SIEU Local 1996 v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (citation omitted).

Here, plaintiff has not demonstrated a likelihood of success on any of his claims, for the reasons set forth in this Order. Accordingly, plaintiff's requests for preliminary injunctive relief are denied without prejudice to his ability to file a motion seeking such relief at a later stage of this case, in connection with any amended complaint he files consistent with this Order.

## Conclusion

For the reasons detailed above:

1. Plaintiff's motion to bar and preclude (Doc. No. 18) is DENIED.

2. Defendants' motion to dismiss (Doc. No. 12) is GRANTED, without prejudice to plaintiff's ability to file, within thirty days, an amended complaint stating a "class of one" equal protection claim, as set forth in this Order.

3. If plaintiff fails to file an amended complaint as directed within the 30-day period allowed for him to do so, the court will direct that judgment be entered in favor of defendants forthwith, and this case will be closed.

4. Plaintiff's request for preliminary injunctive relief, set forth in the complaint (Doc. No. 1), is denied without prejudice.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 28, 2019

cc:  Christopher Cremeans, pro se
     Scott Edward Sakowski, Esq.